### ALLEGED SLANDER IN THE PULPIT.

Circuit Court of Mahoning County.

THOMAS WILK v. TAOFIL ROBERT.

Decided, December 26, 1911.

*Slander—Words Spoken by Priest in Sermon.*

Unquestionably it is a part of the duty of a priest who has the spiritual charge of his congregation to look after the moral character of those in his church, to reprove them for immorality, and to do it with vigor and earnestly, but he can not charge in public those in his congregation who are not guilty of crime, with being criminals, without being required to respond in damages, as any other man is required to respond.

*David Steiner,* for plaintiff in error.
*W. S. Anderson,* contra.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

Thomas Wilk is the priest in charge of a Polish church; Robert is a member of the congregation of said church.

On the 8th of August, 1909, Wilk preached a sermon to his congregation in which he referred to Taofil Robert, using words which Robert claims to have been slanderous. Robert sued Wilk for this alleged slander. In his petition Robert gives the Polish words which he says Wilk used concerning him, and he gives what he says is the English meaning of the words used, and he says that what was said of him in the sermon means in English that he, Robert, was a knave, criminal, a rogue, a scoundrel, a villain, and a cheat and deceiver.

The evidence shows that at the date named, Wilk preached a sermon to his congregation, in which he named Robert, with others, and used denunciatory language against them. There is a conflict in the evidence as to just what Polish words were used, and the English meaning of the words used is not given the same by all the witnesses, but it is plain, from the evidence of all the witnesses, and from Wilk's own testimony, that he used and intended to use language condemnatory of Robert, and the jury found, by the preponderance of the evidence, that the English meaning of the Polish words used in reference to Robert was substantially as charged in the petition. Without question, if the language used meant to charge Robert with being a criminal, a scoundrel, a villain and a cheat, these words were slanderous, if not true.

The words were uttered in the presence of several hundred people who understood the Polish language. The petition charges that they were false and malicious; that Robert, who carries on a small business at Youngstown, where these words were used, was greatly injured in his business by reason of the utterance of the words.

The defendant below, Wilk, by his answer, denies that he preached any sermon in which he in any manner referred to Robert either directly or indirectly. He says that it is his duty to conduct religious services in the church of which he was pastor, and to celebrate the mass, and to direct and exhort the people over whom he has charge to live honorable and moral lives; and he says that at the date charged, he celebrated mass and preached a sermon to his congregation.

As already said, the evidence clearly shows that Wilk did refer, by name, in the sermon preached on the date referred to, to Mr. Robert, and did use condemnatory language of him by name; but if the language used had only the meaning which some of the witnesses give to it, the words would not be slanderous in the way in which they were used. It was sought to show, on the part of the defendant below, that the priest, by the rules of the church in which he holds the official position of priest, was privileged to use such language of and concerning the plaintiff below as he did use; but if the words used were such as directly charged the plaintiff with being a criminal, when in fact he was not a criminal, the official position of the priest could not relieve him from the responsibility to which any man is subject, who falsely charges another with being a criminal.

Unquestionably it is a part of the duty of the priest who has the spiritual charge of his congregation, to look after the moral character of those in his church, to reprove them for immorality, and to do it with vigor and earnestly, but he must not charge in public those in his congregation who are not guilty of crime with being criminals, without being required to respond in damages, as any other man would be required to respond.

We do not feel that, under the evidence in this case, the judgment could be reversed because against the weight of the evidence. It was for the jury to say, and we are not surprised that they reached the conclusion, that the words used were slanderous.

It is urged, however, that the court erred in failing to charge a proposition requested of it. That request reads:

"Where a party makes a communication, and said communication is prompted by a duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged if made in good faith and without actual malice."

We think this request was properly refused. Without any qualification of the words used in this request the jury might very well have been mislead by it. It can not be questioned that one may say things of another in the discharge of a duty for

which he would not be responsible as he would in the same sense if he used them simply as a matter of gossip, or for the purpose of circulating a story; but it is never any man's duty to make statements concerning another which charge him with being a criminal, when such statements are not true.

In the charge as given, including the requests made by the defendant below, which were given, the court stated the law as fairly to the defendant below as he was entitled to have it stated. There is but one possible exception to this, and that is the charge as to punitive damages; but upon examination of the whole case, we think the defendant below can have no just complaint as to the charge in this regard. The court said:

"As to punitive damages, that is, 'smart money,' as it is sometimes called, that is, damages in addition to compensatory damages, it is a question that is left with you in your own good sense and judgment to determine whether you will give punitive damages or not. You may give them if you think, upon proper consideration of the case, something ought to be added; you may add something to compensatory damages, and compensatory damages, I may say, include a reasonable counsel fee for the plaintiff for preparing and the trial of the case. But you are not obliged to give punitive damages unless you think it ought to be given; and punitive damages are given for the purpose, not only of punishing the defendant, but also as a warning to others; and that matter is left to the sound discretion of the jury as to whether they will or will not give punitive damages in addition to other damages, if you find for the plaintiff, that is, in addition to compensatory damages."

It is charged in the petition that the words spoken were maliciously spoken. The court did not in this connection say that punitive damages could only be allowed in case the jury found that the words were maliciously spoken, but the court, in an earlier part of the charge, had instructed the jury as to the circumstances and facts under which they might return simply nominal damages, and then as to compensatory damages. We think the verdict itself which was for but $200, negatives any claim that the jury gave anything by way of punitive damages. The evidence tends to show that the plaintiff below suffered actual damages in his business, and as the amount of the verdict

was but $200 it seems clear that no part of it could have been given by way of punitive damages.

Considering the entire case, we feel that substantial justice was done by the verdict and the judgment, and said judgment is affirmed.

---

## VARIANCE NOT GROUND FOR REVERSAL UNLESS PREJUDICIAL.